UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOAQUIN THATCHER,

                             Plaintiff,

    v.

NEW YORK STATE DEPARTMENT OF
CORRECTION AND COMMUNITY
SUPERVISION, *et al.*,

                            Defendants.

No. 16-CV-2310 (KMK)

OPINION AND ORDER

Appearances:

Joaquin Thatcher
Otisville, NY
*Pro Se Plaintiff*

Jennifer Rose Gashi, Esq.
Office of the Attorney General, State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Joaquin Thatcher ("Plaintiff"), currently an inmate at Otisville Correctional Facility ("Otisville"), filed the instant Amended Complaint, pursuant to 42 U.S.C. § 1983, against the New York Department of Correction and Community Supervision ("DOCCS"); Ada Perez, Superintendent of Downstate Correctional Facility ("Downstate"); Sergeant Candibus; Correction Officer ("C.O.") Cassillas; C.O. Wells; C.O. Gold; C.O. Grisenthwaite; C.O. Kynoch; and C.O. Nelson Gonzalez (collectively, "Defendants"). (*See* Am. Compl. (Dkt. No. 13).) Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by subjecting him to unconstitutionally cruel conditions of confinement while he

was incarcerated at Downstate. (*Id.* at 2, 5.)[1] Plaintiff seeks damages of $350,000 and requests Defendants pay a fine of $7,000,000. (*Id.* at 6.) Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. To Dismiss (Dkt. No. 25); *see also* Mem. of Law in Support of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 26).)

For the following reasons, the Motion To Dismiss is granted.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's Amended Complaint and the exhibits attached to it, and are taken as true for the purpose of resolving the instant Motion. Between February 9, 2016 and February 17, 2016, Plaintiff was incarcerated at Downstate Correctional Facility, where he was "housed in a unit with no heat and hot water and was forced to take cold showers and sleep in extreme cold conditions," (Am. Compl. 5), "during the coldest week on record," (*id.* at 6). Further, "[a] majority of the windows in each cell were broke[n] and my cell was missing storm windows." (*Id.* at 5.) As a result, Plaintiff "became very sick with a chest cold, runny nose, high fever and headaches." (*Id.* at 6.) Although Plaintiff "applied for sick bay multiple times," he "was not seen by a doctor until a week later." (*Id.*)

Plaintiff "complained to the C.O.s and Sgt. Candibus and . . . was notified to grieve this issue." (*Id.* at 5). Plaintiff filed a formal grievance. (*See id.* at 9 (list of grievants)). The grievance was first denied by the Inmate Grievance Review Committee on March 2, 2016. (*See id.* at 10).[2] Plaintiff's appeal was denied by Defendant Superintendent Ada Perez on grounds that

---

[1] The Amended Complaint does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of the Amended Complaint.

[2] The DOCCS Inmate Grievance Program ("IGP") provides the three-step process that applies to grievances filed by inmates in New York State prisons. *See* 7 N.Y.C.R.R. § 701.5. At

2

"the investigation reveals that the heat was always on; however, with the extremely cold weather that past weekend, some of the temperatures ran cooler in some housing units[,] thus a temporary boiler was utilized and extra blankets were made available." (*Id*. at 8). Plaintiff appealed Perez's decision to CORC, noting that although "[b]lankets were giv[en] out, . . . the officer in the unit confiscated the blankets the same day they were giv[en] out." (*Id.*) CORC denied the appeal on June 22, 2016. (*See id.* at 11 (CORC response).) It acknowledged that "there was a break in the hot water line from Fishkill [Correctional Facility] on [January 13, 2016], and that staff and inmates were notified," but concluded that "the heat was not shut off during the winter months," that "an additional boiler was utilized when the weather became extremely cold," and that "extra blankets were made available." (*Id*.)

B. Procedural Background

Plaintiff filed his initial Complaint on March 28, 2016. (Dkt. No. 2.) On November 21, 2016, the Court denied Plaintiff's request to proceed in forma pauperis. (Dkt. No. 4.) On January 4, 2017, the Court issued an Order directing service on identified Defendants, identification of unidentified Defendants, and dismissal of Defendant Downstate Correctional Facility. (Dkt. No. 8.) Defendants provided identification information, (Dkt. No. 10), and, on April 7, 2017, Plaintiff filed the instant Amended Complaint, (Dkt. No. 13). On October 26, 2017, the Court issued an Order directing service on newly identified Defendants. (Dkt. No. 14.) On May 8, 2018, the Court issued an Order directing Plaintiff to provide additional information

---

the first step, an inmate submits a written grievance to the Inmate Grievance Review Committee ("IGRC"), which "conduct[s] a hearing to answer the grievance or make a recommendation to the superintendent." *Id.* § 701.5(b). If the IGRC's determination is adverse to the inmate, at the second step the inmate appeals to the superintendent. *Id.* § 701.5(c). And if the superintendent's determination is adverse to the inmate, at the third and final step the inmate appeals to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

3

to identify Defendant C.O. Gonzalez. (Dkt. No. 20). Plaintiff did so, (Dkt. No. 27), and Defendant was thereafter identified as C.O. Nelson Gonzalez, (Dkt. No. 32).[3]

On June 27, 2018, Defendants submitted to the Court a pre-motion letter requesting a conference to discuss Defendants' proposed Motion To Dismiss. (Dkt. No. 23.) On July 12, 2018, the Court granted Defendants' request to file a Motion To Dismiss and set a briefing schedule. (Dkt. No. 24.) On August 10, 2018, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Not. of Mot. (Dkt. No. 25); Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 26).) On September 18, 2018, Plaintiff filed his Response. (*See* Resp. to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 28.)). On September 24, 2018, Defendants filed their Reply. (*See* Reply in Supp. of Defs.' Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 30).)

## II. Discussion

### A. Standard of Review

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mem. 1; Defs.' Reply 1.) The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of

---

[3] Defendant Gonzalez has not yet been served.

4

further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citation omitted).

5

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

1. Personal Involvement

Defendants move to dismiss the Amended Complaint on grounds that Plaintiff fails to allege Defendants' personal involvement in the alleged constitutional violation. (Defs.' Mem. 1, 8–9; Defs.' Reply 1.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

### a. Superintendent Perez

A prison superintendent "cannot be held personally liable for constitutional violations merely 'because [s]he [is] in a high position of authority.'" *Smart v. Gifford*, No. 15-CV-8939, 2018 WL 401516, at *13 (S.D.N.Y. Jan. 12, 2018)) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "[A]bsent some personal involvement by [the superintendent] in the allegedly unlawful conduct of [her] subordinates, [s]he cannot be held liable under Section 1983." *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Here, Plaintiff does not allege that Perez caused the lack of heat, the lack of hot water, or the broken windows, that Perez extended the duration of the conditions, that Perez created a policy or custom under which the conditions occurred, that Perez was grossly negligent in supervising subordinate prison officials who themselves caused or extended the conditions, or that Perez failed to act on information indicating that unconstitutional conditions existed. (*See* Am. Compl. 5–6.) Plaintiff thus makes no argument as to Perez's personal involvement based on *Grullon* prongs 1, 3, 4, or 5. *See Grullon*, 720 F.3d at 139. The Amended Complaint alleges only that Perez considered and denied Plaintiff's appeal of his administrative grievance. (Am. Compl. 8 (Perez response).) Plaintiff makes, in other words, a *Grullon* prong 2 allegation: that

Perez, "after being informed of the violation through a report or appeal, failed to remedy the wrong." *Grullon*, 720 F.3d at 139. The question arises, then, whether the denial of a grievance alone constitutes personal involvement for purposes of Section 1983.

As this Court recently noted, there is some division within the Second Circuit on the question. *See Allah v. Annucci*, No. 16-CV-1841, 2018 WL 4571679, at *7 (S.D.N.Y. Sept. 24, 2018). This Court adopted the position that "'an alleged constitutional violation complained of in a grievance must be *ongoing* in order to find personal involvement, such that the supervisory official who reviews the grievance can remedy it directly.'" *Id.* (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 361–62 (S.D.N.Y. 2009) (emphasis added)). That is, "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008).

Here, Plaintiff cannot show an ongoing violation. The Amended Complaint twice states that the alleged unconstitutional conditions took place between February 9 and 17, 2016. (Am. Compl. 5, 8.) Plaintiff's grievance was filed on February 17, the last day of the alleged conditions. (*Id.* at 9.) The grievance first went to the IGRC, which issued its decision on March 2, 2016, some two weeks after the end of the alleged conditions. (*Id.* at 10.) Based on these allegations, it is impossible that Superintendent Perez, as the official who reviewed the IGRC's decision, *see* 7 N.Y.C.R.R. § 701.5(c), could have remedied the unconstitutional conditions directly. *See Grullon*, 720 F.3d at 139. That is, even had Perez *immediately* issued a decision on Plaintiff's grievance appeal, by March 2, 2016 the alleged unconstitutional conditions had since ended.

Plaintiff therefore fails to allege Perez's personal involvement on either a direct or a supervisory basis. *See Reid v. Nassau Cnty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *12 (E.D.N.Y. Aug. 20, 2014) (holding the plaintiff failed to establish personal involvement because he "has not alleged the direct participation of the Superintendent in any of the wrongdoing alleged in his complaint, nor any basis upon which to find the Superintendent liable in a supervisory capacity"); *Shomo v. City of N.Y.*, 579 F.3d 176, 184 (2d Cir. 2009) ("Given [the plaintiff's] failure to allege the supervisors' personal involvement in the alleged Eighth Amendment violations, the district court properly ruled that [the plaintiff] failed to state valid claims against the supervisors.").

### b. Correction Officer Defendants and Defendant Candibus

Plaintiff also fails to plausibly allege the personal involvement of the Correction Officer Defendants and Defendant Sergeant Candibus. The Amended Complaint states only that Plaintiff "complained to the C.O.s and Sgt. Candibus and . . . was notified to grieve this issue." (Am. Compl. 5.) This statement is conclusory. Plaintiff does not explain in any detail when and how often he complained to these Defendants; whether he complained to these Defendants while in his cell or elsewhere; or how these Defendants responded. Such limited factual allegations are insufficient to state that these Defendants created or participated directly in the alleged unconstitutional conditions, that they created or followed a policy or custom under which the alleged conditions occurred, or that they were in any other way personally involved in the alleged violation.[4] Indeed, the attachments to the Amended Complaint show that, in reviewing Plaintiff's final appeal of his grievance, CORC acknowledged that "there was a break in the hot

---

[4] This is especially so with respect to the Correction Officer Defendants. Although Plaintiff identifies Defendant Sgt. Candibus by name, (Am. Compl. 5), Plaintiff does not identify any specific Correction Officer Defendant to whom he complained.

water line from Fishkill CF on [January 13, 2016] and that staff and inmates were notified." (Am. Compl. 11 (CORC response); *see also id.* at 12 (letter from Dep. Comm'r for Admin. Servs. to Plaintiff noting that "the heat distribution to Downstate had experienced issues at the time of your writing" and that "[r]epairs to the system were promptly performed[,] restoring heat and domestic hot water delivery") .) These statements would appear to show that these Defendants did *not* cause the alleged unconstitutional conditions, yet Plaintiff offers no response or otherwise allege Defendants' personal involvement.

Nor does the Amended Complaint allege that these Defendants failed to remedy the conditions "after being informed of the violation." *Grullon*, 720 F.3d at 139. That is so despite Plaintiff having a clear opportunity to allege as much. In denying Plaintiff's initial grievance appeal, Defendant Perez stated that "a temporary boiler was utilized and extra blankets were made available" to combat "the extremely cold weather." (Am. Compl. 8 (Perez response).). Yet, Plaintiff does not respond as to the boiler fix, and indeed acknowledges that "blankets were giv[en] out" to remedy the conditions. (*Id.*). Although Plaintiff stated in his grievance appeal that "the officer in the unit confiscated the blankets the same day they were giv[en] out," Plaintiff provides no further details there or in the body of the Amended Complaint as to whether he received a blanket, which prison official confiscated the blankets (and whether it was a named Defendant), why the blankets were confiscated (i.e., whether it was due to an alleged prison policy or for another reason), or anything else going toward Defendants' (non)involvement in remedying the conditions. *See Thompson v. Booth*, No. 16-CV-3477, 2018 WL 4760663, at *7 (S.D.N.Y. Sept. 28, 2018) (holding the plaintiff failed to allege personal involvement where "[t]here is no allegation that [a defendant] failed to 'act on information regarding the [allegedly]

10

unlawful conduct' or otherwise acted with 'gross negligence'" (quoting *Reid*, 2014 WL 4185195, at *12)).

Because Plaintiff fails to plausibly allege the personal involvement of Defendants Perez, Candibus, Cassillas, Wells, Gold, Grisenthwaite, Kynoch, and Gonzalez, the Amended Complaint is devoid of sufficient factual allegations to allow the Court to "draw the reasonable inference that" these Defendants are "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79.

### 2. Eighth Amendment

The Eighth Amendment's prohibition on the imposition of "cruel and unusual punishments," U.S. Const. amend. VIII, "sets constitutional boundaries on the conditions of imprisonment," *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). "Although the Constitution does not require comfortable prison conditions, the conditions of confinement may not involve the wanton and unnecessary infliction of pain." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citation omitted). To state a cognizable Eighth Amendment challenge to conditions of confinement, a plaintiff must plead both an objective element and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "objective" element requires a plaintiff demonstrate the existence of conditions that are "sufficiently serious that he was denied the minimal civilized measure of life's necessities," *id.*, that is, conditions that "either alone or in combination[] pose an unreasonable risk of serious damage to [the plaintiff's health," *Walker*, 717 F.3d at 125. This may be shown where the plaintiff is "deprived of basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Id.* "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary

standards of decency." *Id*. (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)). The "subjective" element requires a plaintiff demonstrate that the defendant acted with "deliberate indifference." *Farmer*, 511 U.S. at 835. Deliberate indifference is "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer*, 511 U.S. at 839–40). A defendant "cannot be found liable under the Eighth Amendment for denying an inmate human conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). The plaintiff must, in other words, allege "more than mere negligence" to support a claim. *Farmer*, 511 U.S. at 835.

Regardless whether Plaintiff's Amended Complaint satisfies the objective element — a question the Court does not here decide — Plaintiff fails to satisfy the subjective element. The threadbare Amended Complaint states only that Plaintiff "complained to the [Correction Officers] and [to] Sgt. Candibus" about the lack of hot water and heat and the broken windows, and "was notified to grieve this issue." (Am. Compl. 5.) As noted above, however, Plaintiff does not state what he said to the Correction Officer Defendants or to Defendant Candibus, when he spoke to them, or how they reacted. Nor does Plaintiff mention Defendant Perez at all in the body of his Amended Complaint. Plaintiff does allege that he "became very sick with a chest cold, runny nose, high fever and headaches" and that he "applied for sick bay multiple times and

12

was not seen by a doctor until a week later." (*Id.*) But Plaintiff does not explain whether any Defendant, as opposed to other prison officials, denied his requests for sick bay, or indeed whether any Defendant knew of his symptoms. On these minimal factual allegations, Plaintiff fails to sufficiently plead deliberate indifference to inmate health. *See Farmer*, 511 U.S. at 837 (noting that a plaintiff must allege an official *knowingly* disregarded an excessive risk to inmate health); *compare Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *11 (S.D.N.Y. May 10, 2018) (holding that as to a certain defendant, the complaint failed to plausibly allege deliberate indifference to the plaintiff's drug overdose because the "[p]laintiff does not specify what [she] was told, where she was told, or how soon after the overdoses she was told") *with id.* at *9–10 (holding that as to certain other defendants, the complaint plausibly alleged deliberate indifference where complaint contained numerous factual details). The Amended Complaint does not allege that Defendants — assuming they were aware of the alleged conditions — were aware that the conditions posed a serious risk to Plaintiff's health and thereafter knowingly failed to mitigate the risk. *See Collins v. Fischer*, No. 15-CV-103, 2018 WL 1626528, at *8 (S.D.N.Y. Mar. 30, 2018) (holding that the plaintiff failed to satisfy the subjective element where, *inter alia*, the plaintiff did "not allege what particular 'inhumane conditions' [a defendant] observed [the] [p]laintiff suffering from"); *cf. Walker*, 717 F.3d at 129–30 (holding the subjective element satisfied where the plaintiff detailed his repeated complaints to the defendants about the prison conditions); *Garraway v. Griffin*, 707 F. App'x 16, 19 (2d Cir. Aug. 31, 2017) (holding the subjective element satisfied where the plaintiff "asserts that he verbally informed each of [certain] defendants about the condition [at issue] . . . at least once and that he informed [another] defendant . . . of the problem several times, both in writing and verbally," and describes the

defendants' responses). On this record, therefore, Plaintiff fails to establish deliberate indifference.

### 3. Defendant New York Department of Corrections and Community Supervision

Although Plaintiff names the New York Department of Corrections and Community Supervision ("DOCCS") as a Defendant, Plaintiff fails to mention DOCCS in the body of his Amended Complaint or in his briefing. (*See generally* Am. Compl.; Pl.'s Mem.) For their part, Defendants fail to argue for dismissal as to DOCCS on any ground. (*See generally* Defs.' Mem.; Defs.' Reply.) However, as a state agency, DOCCS is not a "person" subject to liability under 42 U.S.C. § 1983 and is immune from suit. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Santiago v. N.Y. State Dep't of Correctional Servs.*, 945 F.2d 25, 28 & n.1 (2d Cir. 1991).

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.[5]

Plaintiff's claims as to Defendant DOCCS are dismissed *with prejudice*.

Plaintiff's claims as to Defendants Perez, Candibus, Cassillas, Wells, Gold, Kynoch, Grisenthwaite, and Gonzalez are dismissed *without prejudice*. If Plaintiff wishes to file a second amended complaint as to these Defendants only, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that second amended complaint any changes to

---

[5] Because the Court concludes that Plaintiff fails to allege the personal involvement of Defendants for purposes of § 1983, that Plaintiff fails to satisfy the subjective element of an Eighth Amendment conditions-of-confinement claim, and that DOCCS is immune from suit, the Court need not consider Defendants' argument as to qualified immunity. (*See* Defs.' Mem. 1, 9–11.) Further, Defendants make no actual argument as to why they are entitled to qualified immunity. Although they cite to the qualified immunity case law, they fail to meaningfully apply it to this case. (*See id.*) The Court therefore declines to consider this argument at this time. Defendants may, however, renew their qualified immunity defense at a later date.

correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the second amended complaint will replace, not supplement, all prior complaints. The second amended complaint must contain all of the claims and factual allegations Plaintiff wishes the Court to consider, and comply with Rule 8 of the Federal Rules of Civil Procedure. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 25), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: November 2, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE